<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| | : | |
| CAMILLE N. CRESPO, | : | **Civil Action No. 18-14678 (SRC)** |
| | : | |
| Plaintiff, | : | |
| | : | **OPINION** |
| v. | : | |
| | : | |
| COMMISSIONER OF | : | |
| SOCIAL SECURITY, | : | |
| Defendant. | : | |
| | : | |
| | : | |

**<u>CHESLER, District Judge</u>**

This matter comes before the Court on the appeal by Plaintiff Camille N. Crespo

("Plaintiff") of the final decision of the Commissioner of Social Security ("Commissioner")

determining that she was not disabled under the Social Security Act (the "Act").   This Court

exercises jurisdiction pursuant to 42 U.S.C. § 405(g) and, having considered the submissions of

the parties without oral argument, pursuant to L. CIV. R. 9.1(b), finds that the Commissioner's

decision will be vacated and remanded.

In brief, this appeal arises from Plaintiff's application for supplemental security income

benefits, alleging disability beginning January 1, 2002.   A hearing was held before ALJ David

F. Neumann (the "ALJ") on May 23, 2017, and the ALJ issued an unfavorable decision on July

10, 2017.   Plaintiff sought review of the decision from the Appeals Council.   After the Appeals

Council denied Plaintiff's request for review, the ALJ's decision became the Commissioner's

final decision, and Plaintiff filed this appeal.

1

In the decision of July 10, 2017, the ALJ found that, at step three, Plaintiff did not meet or equal any of the Listings.   At step four, the ALJ found that Plaintiff retained the residual functional capacity to perform work at all exertional levels, with certain limitations, in particular a limitation to simple, routine, and repetitive work.   At step four, the ALJ also found Plaintiff had no past relevant work.   At step five, the ALJ determined, based on the testimony of a vocational expert, that there are jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity.   The ALJ concluded that Plaintiff had not been disabled within the meaning of the Act.

On appeal, Plaintiff argues that the Commissioner's decision should be reversed and the case remanded based on arguments of error at both steps three and four, but this Court need only reach the arguments concerning step four, which succeed.

At step four, the ALJ formulated the residual functional capacity ("RFC") determination as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can perform simple, routine, repetitive work at a specific vocational preparation (SVP) of one or two that involves occasional interaction with coworkers or the public and only occasional changes in work setting.

(Tr. 16.)   Plaintiff argues, persuasively, that this determination suffers from three errors: 1) the explanation is inadequate, pursuant to Burnett; 2) it runs afoul of the Third Circuit's decision in Ramirez; and 3) it is not supported by substantial evidence.

As to the first point, Plaintiff contends that the ALJ provided no explanation for the nonexertional limitations, and the Court finds that Plaintiff is substantially correct.   As to the

2

nonexertional limitations of the RFC, the ALJ provided the following explanation, here quoted in its entirety:

> In sum, the above residual functional capacity assessment is supported by the opinion of Dr. Starace and the clinical findings of Dr. Yalkowsky, which are consistent with the claimant being able to perform unskilled work that involves occasional changes in her work setting and occasional interaction with others.

(Tr. 19.)   While this may not qualify as _no_ explanation, it does not meet Third Circuit requirements for a *sufficient* explanation.   An ALJ need not "use particular language or adhere to a particular format in conducting his analysis," as long as "there is sufficient development of the record and explanation of findings to permit meaningful review."   Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004).   In the present case, the ALJ's decision does not contain sufficient explanation of his nonexertional RFC determination to permit meaningful review.[1]  The ALJ's determination at step four is not amenable to meaningful review and must be vacated, pursuant to Burnett v. Commissioner of SSA, 220 F.3d 112, 119 (3d Cir. 2000).   The ALJ's brief explanation for the determination of nonexertional limitations is not substantially more informative than the conclusory statements found to be insufficient by the Third Circuit in Burnett: "We agree with Burnett the ALJ's conclusory statement in this case is similarly beyond meaningful judicial review."   Id. at 119.   The failure to satisfy the requirements of Burnett by itself requires that the Commissioner's decision be vacated and remanded.

Second, Plaintiff argues persuasively that the ALJ's RFC formulation runs afoul of the Third Circuit's decision in Ramirez v. Barnhart, 372 F.3d 546, 554 (3d Cir. 2004).   Although

---

[1] The failure to sufficiently explain the nonexertional limitations is particularly problematic in a case like this one, in which Plaintiff does not contend that she has substantial exertional limitations, and the core of the dispute concerns the nonexertional limitations.

the Ramirez Court focused on the inadequacies of the hypothetical given to the vocational expert

at step five, Ramirez nonetheless provides guidance relevant to the analysis of the RFC

formulation at step four.   The question in Ramirez was whether the limitation described in the

hypothetical as "no more than simple one- or two-step tasks" adequately conveyed the claimant's

limitations involving deficiencies in concentration, persistence, or pace, and the Third Circuit

held that it did not:

> These limitations do not adequately convey all of Ramirez's limitations. The
> Commissioner contends that the limitation to one to two step tasks is sufficient,
> but we agree with the Magistrate Judge that a "a requirement that a job be limited
> to one to two step tasks, as was stated in the hypothetical relied upon by the ALJ,
> does not adequately encompass a finding that [Ramirez] 'often' has 'deficiencies
> in concentration, persistence, or pace,' as was noted by the ALJ both in her
> decision and on the PRTF attached to the decision."

Id.   The application of Ramirez to the instant case is made difficult by the fact that the ALJ

provided no adequate explanation for the RFC limitation that "the claimant can perform simple,

routine, repetitive work."   Nonetheless, it appears to this Court that this phrase is similar to the

problematic phrase in Ramirez ("no more than simple one- or two-step tasks"), and that, as in

Ramirez, this phrase does not adequately express the deficiencies in concentration, persistence,

and pace that are evidenced in the record.   Id.   With the guidance of Ramirez in mind, the Court

turns to the analysis of the evidence at step four.

Plaintiff contends that the step four RFC determination is not supported by substantial

evidence.   The ALJ begins by discussing Plaintiff's statements about her symptoms, and then

turns to the medical evidence, stating: "The only documented treatment of record occurred more

than two years before the application date."   (Tr. 17.)   This statement is obviously mistaken,

since the ALJ next discusses the evidence from after the application date from Plaintiff's treating

4

psychiatrist, Dr. Quintana.   Yet, after describing the evidence from Dr. Quintana, the ALJ

makes a similar mistake: "The only medical evidence specifically relevant to the period at issue

in this decision is the consultative examination report of Dr. Yalkowsky."   (Tr. 17.)

As Plaintiff contends, the ALJ refused to give any weight to Dr. Quintana's written

opinion that Plaintiff was unable to work because Dr. Quintana did not submit records of

treatment.   The ALJ explained this decision as follows, here quoted in its entirety:

> As discussed elsewhere in this decision, Dr. Quintana did not provide any
> treatment records with his medical source statement. Therefore, there is no record
> of evidence regarding clinical signs, efficacy of medication, possible side effects,
> or a longitudinal history of complaints or symptoms caused by the claimant's
> impairments. The record also does not show any treatment from Dr. Quintana
> until July 2015; any estimation of an inability to work since prior to his treatment
> relationship would not be established by his own clinical findings. Based on the
> lack of supporting evidence, I must give little weight to the opinion of Dr.
> Quintana.

(Tr. 18.)   Plaintiff argues that this violates Third Circuit law, pursuant to such cases as Morales

and Brownawell.   This Court agrees.   In Morales, the Third Circuit held:

> A cardinal principle guiding disability eligibility determinations is that the ALJ
> accord treating physicians' reports great weight, especially when their opinions
> reflect expert judgment based on a continuing observation of the patient's
> condition over a prolonged period of time. Where, as here, the opinion of a
> treating physician conflicts with that of a non-treating, non-examining physician,
> the ALJ may choose whom to credit but cannot reject evidence for no reason or
> for the wrong reason. The ALJ must consider the medical findings that support a
> treating physician's opinion that the claimant is disabled. In choosing to reject the
> treating physician's assessment, an ALJ may not make speculative inferences
> from medical reports and may reject a treating physician's opinion outright only
> on the basis of contradictory medical evidence and not due to his or her own
> credibility judgments, speculation or lay opinion.

Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (citations omitted).   See also Brownawell v.

Comm'r of Soc. Sec., 554 F.3d 352, 357 (3d Cir. 2008) ("We have consistently held that it is

improper for an ALJ to credit the testimony of a consulting physician who has not examined the

claimant when such testimony conflicts with testimony of the claimant's treating physician.")

Two points from Morales must be noted.   First, the ALJ may reject the treating physician's

opinion outright – which the ALJ did here – only on the basis of contradictory medical evidence.

The ALJ did not reject Dr. Quintana's opinion on the basis of contradictory medical evidence.

Second, the ALJ cannot reject evidence for the wrong reason.   Here, the ALJ rejected Dr.

Quintana's opinion because there were no treatment records submitted.   It is telling that the

Commissioner, in opposition, fails to address the requirements of Morales in particular, or the

requirements of Third Circuit law for properly rejecting a treating physician's opinion.   The one

argument the Commissioner offers to support the ALJ's rejection of Dr. Quintana's opinion is

this:

> Dr. Quintana's opinion did not qualify as such given the noted lack of
> corroboration with contemporaneous treatment records (Tr. 18). *See* 20 C.F.R. §
> 416.927(e)(2)(i) (providing that state agency physicians are highly qualified
> experts in Social Security disability evaluation); Chandler, 667 F.3d at 361)
> (stating that state agency opinions "merit significant consideration").

(Def.'s Opp. Br. 18.)   There are two problems here.   First, the Commissioner has imagined a

reason for the ALJ's rejection, that Dr. Quintana's opinion did not qualify as an opinion because

of the lack of treatment records.   The ALJ did not write that.   Second, the parentheticals to the

citations make clear that these citations do not support the argument that the Commissioner has

made.   The Commissioner has offered no authority to support the proposition that a medical

opinion without treatment records is not a medical opinion.

In addition, the Commissioner's opposition brief tries to support the ALJ's rejection of

Dr. Quintana's opinion by pointing to authority that requires that a treating physician's opinion

be consistent with the other medical evidence of record.   The characterization of the law is

correct but irrelevant here: the ALJ did not reject Dr. Quintana's opinion because it was not

consistent with the other medical evidence of record.   Again, this is not the explanation the ALJ

wrote.

The Commissioner has failed to persuade this Court that the ALJ had a legally valid

reason for rejecting Dr. Quintana's opinion.   The ALJ erred in rejecting Dr. Quintana's opinion.

The ALJ next discussed the evaluation of consultative examiner Dr. Yalkowsky.   Dr.

Yalkowsky's report, dated February 11, 2015, stated this conclusion:

> At this time, it is felt diagnoses of bipolar disorder, anxiety disorder, NOS and
> attention deficit hyperactivity disorder are warranted. Furthermore, it is felt that
> impact stemming from her mental health issues is moderate to severe in nature.

(Tr. 278.)   The report describes certain assessments performed and states: "It is felt that

deficiencies in performance noted on this particular day are largely attributable to impact

stemming from attention deficit hyperactivity disorder."   (Tr. 278.)   The ALJ quoted much of

this, but omitted the diagnoses.   (Tr. 17.)   The ALJ then stated:

> The opinion of Dr. Yalkowsky is provided significant weight as it was formed
> through personal evaluation of the claimant; I decline to give his opinion greater
> weight, however, as it is ultimately vague regarding the claimant's specific work-
> related limitation and the results of his mental status examination are not
> consistent with the claimant having "severe" limitations imposed by her
> impairments.

(Tr. 17-18.)   Plaintiff contends that the ALJ has "cherry-picked" Dr. Yalkowsky's report, which

is a fair description.   (Pl.'s Br. 18.)   Plaintiff further states: "the impact of Dr. Yalkowsky's

report is rendered completely misunderstood in the decision."   (Pl.'s Br. 19.)   This is also

largely a fair assessment, but a better characterization is that the ALJ reported some of Dr.

Yalkowsky's findings and nullified all of them.   Although the ALJ wrote that the opinion was

given significant weight, neither the ALJ's explanation of the decision nor the RFC

determination itself bear that out.   The ALJ's explanation of the decision gives lip service to the evidence from Dr. Yalkowsky, but not more than that.

Last, the ALJ discussed the report of the agency reviewer, Dr. Starace, who reviewed the records on June 25, 2015.   (Tr. 76.)   At that point in time, Plaintiff had not yet entered treatment with Dr. Quintana, but Dr. Starace had reviewed Dr. Yalkowsky's evaluation report. (Tr. 75.)   Dr. Starace wrote that Plaintiff's ability to sustain attention and concentration for extended periods was moderately limited.   (Tr. 74.)   Despite that finding, in the final sentence of the report, Dr. Starace wrote that the claimant "can sustain concentration, pace persistence." (Tr. 75.)   The ALJ concluded: "I give great weight to the opinion of Dr. Starace as it is based on review of the totality of the evidence, with the exception of the medical source statement provided by Dr. Quintana."   (Tr. 18.)

The ALJ, in describing what Dr. Starace found, omitted that Dr. Starace found that the ability to sustain concentration and attention was moderately limited, even though the ALJ reported other areas in which Dr. Starace found moderate limitations.   (Tr. 18.)

This covers all of the medical evidence discussed by the ALJ.   The bottom line is that the ALJ arrived at a residual functional capacity determination that failed entirely to reflect the findings of Plaintiff's treating psychiatrist, having rejected them, nullified the findings of the consultative examiner, and relied on the opinion of an agency reviewer who did not review the complete record and whose final assessment is contradicted by his findings.

The Court reviews the Commissioner's decisions under the substantial evidence standard. This Court must affirm the Commissioner's decision if it is "supported by substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); Stunkard v. Sec'y of Health and Human Services, 841 F.2d 57,

59 (3d Cir. 1988); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986).   Substantial evidence is

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB,

305 U.S. 197, 229 (1938)). Substantial evidence "is more than a mere scintilla of evidence but

may be less than a preponderance."   McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir.

2004).   The reviewing court must consider the totality of the evidence and then determine

whether there is substantial evidence to support the Commissioner's decision.   See Taybron v.

Harris, 667 F.2d 412, 413 (3d Cir. 1981).

Based on the analysis presented, this Court concludes that the ALJ's residual functional

capacity determination is not supported by substantial evidence.   Dr. Quintana opined that

Plaintiff was unable to work.   Dr. Yalkowsky reported difficulties with concentration and gave

diagnoses of bipolar disorder and attention deficit disorder.   Dr. Starace found moderate

difficulties with sustained attention but inexplicably concluded that Plaintiff could sustain

attention.   This Court finds no substantial evidence that supports the ALJ's RFC determination.

For these reasons, this Court finds that the Commissioner's decision is not supported by

substantial evidence.   The Commissioner's decision is vacated and remanded for further

proceedings in accordance with this Opinion.

                                                          s/ Stanley R. Chesler
                                                          STANLEY R. CHESLER, U.S.D.J.
Dated:   June 22, 2020

9